FOROX CORPORATION *v.* JOHN G. GROPPO, COMMISSIONER OF REVENUE SERVICES (8941)

DALY, O'CONNELL and CRETELLA, Js.

Argued November 9, 1990—decision released February 5, 1991

*Edward T. Blair,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellant-appellee (defendant).

*Kathleen C. Stone,* for the appellee-appellant (plaintiff).

O'CONNELL, J. The defendant commissioner of revenue services (commissioner) appeals from a judgment abating interest on an assessment of Connecticut sales tax and finding that certain component parts were exempt from the use tax. The plaintiff cross appeals claiming that none of the sales of its camera systems should be subject to the sales tax.

The plaintiff is a Connecticut corporation engaged in manufacturing and selling camera systems that consist of various components including camera equipment. The plaintiff develops camera systems that are sold to audiovisual producers and custom photographic laboratories that utilize the camera to produce projection slides or similar products, which are ultimately marketed to consumers. Sales to other types of customers are not involved in this appeal.

The plaintiff's sales and use tax returns for the years 1980 through 1984 indicated that no tax was due. An audit by the commissioner resulted in the assessment

of sales and use taxes which are the subject of this case. The plaintiff appealed the assessment to the Superior Court pursuant to General Statutes § 12-422.[1] The court abated all interest on the sales tax assessment and found that no use tax was due on those component parts used by the plaintiff in manufacturing prototypes of its camera systems.

## I

The commissioner's first argument is that the court lacked authority to base its abatement of interest on the ground of financial hardship. The trial court's memorandum of decision, however, discloses two grounds for abating the interest: (1) financial hardship; and (2) good faith on the plaintiff's part in believing that no tax was due. The plaintiff's good faith is based on the fact that the plaintiff corporation was founded in New York state in 1967 and moved to Connecticut in 1977. When the plaintiff was located in New York, the sales of its camera systems were exempt under the sales tax laws of that state. Upon moving to Connecticut, the plaintiff relied on its accountant's advice that the sales would continue to be exempt under the Connecticut law as production materials. General Statutes § 12-412 (18).[2]

The commissioner does not dispute that in *American Totalisator Co.* v. *Dubno*, 210 Conn. 401, 411, 555

[1] General Statutes § 12-422 provides in pertinent part: "APPEAL. Any taxpayer aggrieved because of any order, decision, determination or disallowance of the commissioner of revenue services under section 12-418, 12-421 or 12-425 may, within one month after service upon the taxpayer of notice of such order, decision, determination or disallowance, take an appeal therefrom to the superior court for the judicial district of Hartford-New Britain . . . ."

[2] General Statutes § 12-412 provides in pertinent part: "Taxes imposed by this chapter shall not apply to . . . (18) PRODUCTION MATERIALS. Sales of and the storage or use of materials . . . which become an ingredient or component part of tangible personal property to be sold or which are used directly in . . . an industrial plant in the actual fabrication of the finished product to be sold."

A.2d 414 (1989), the Supreme Court construed General Statutes § 12-422 to include the power of the court to abate interest. Nor does the commissioner contest the validity of abating interest on the basis of the plaintiff's good faith belief that it did not owe the tax. The commissioner's sole contention is that because the trial court stated two grounds for abatement, one of which he claims is unlawful, this court should vacate the entire judgment. No authority is furnished for this proposition nor are we aware of any. If any stated reason will support a judgment, it would be an unwarranted academic exercise for us to consider the validity of other stated reasons. *Butzgy* v. *Glastonbury,* 203 Conn. 109, 116, 523 A.2d 1258 (1987).

We do not reach the question of whether financial hardship is also an appropriate ground for the abatement because the court properly relied on good faith to abate the interest.[3]

## II

Some background is necessary to understand our analysis of the commissioner's second claim. Chapter 219 of the General Statutes establishes a sales and use tax. The sales aspect of the law imposes a tax on sales within this state of tangible personal property.[4] The use aspect of the law imposes a tax on the use in this state of tangible personal property shipped into Connecticut from out of state vendors who have not paid sales tax to this state.[5] This part of the appeal is con-

---

[3] The question of whether financial hardship is a lawful basis for abatement of interest will not arise in the future because No. 89-343, § 1, of the 1989 Public Acts removed the power of the court to abate interest on tax assessments for any reason on appeals taken on or after June 9, 1989. Public Acts 1989, No.89-343, does not apply to this case.

[4] Numerous classifications of intangible personal property, not relevant to this appeal, are also subject to the tax. General Statutes § 12-407 (2).

[5] General Statutes § 12-411 provides in pertinent part: "(1) IMPOSITION AND RATE. An excise tax is hereby imposed on the storage, acceptance,

cerned solely with the use tax aspect of the law. We focus here on the provision of the statute that exempts any "materials . . . which become an ingredient or component part of tangible personal property to be sold . . . ." General Statutes § 12-412 (18).[6] For example, if a Connecticut company made vacuum cleaners and acquired bags for the cleaners from an out of state source, the bags would be component parts of the personal property (i.e., the vacuum cleaner) to be sold and would be exempt from the use tax. If, however, the Connecticut manufacturer set aside some bags to be consumed during research, the exemption would not apply to those bags because they did not become part of property to be sold.

In the present case, the issue is whether the parts used in the plaintiff's prototype camera systems qualify as a "component part of tangible personal property to be sold . . . ." Most of the parts purchased from out of state vendors were used in established production line camera systems marketed by the plaintiff. As applied to these parts, the production material exemption is not disputed. The problem arises because the plaintiff also uses some of these component parts for its prototype camera systems. As used in this case, the term "prototype" refers to an improved version of a camera system already in production. All the prototypes are eventually sold to customers after first being displayed at trade shows.

The commissioner contends that parts earmarked for prototypes are intended for research and do not qualify for the statutory exemption. In support of this argu-

consumption or any other use in this state of tangible personal property purchased from any retailer . . . or the acceptance or receipt of any services constituting a sale . . . at the rate of eight per cent of the sales price of the property or the consideration paid for any such services . . . ."

The rate of the tax has varied over the years.

[6] See footnote 2, supra.

ment, he directs our attention to the plaintiff's different method of parts accounting and inventorying of prototype parts. He claims this accounting method demonstrates that these parts were intended for research and not for sale. The commissioner also contends that the treatment of these parts on the plaintiff's federal income tax return is determinative of whether the plaintiff was partially engaged in research. Although evidence of the plaintiff's federal income tax return may be relevant, the trial court properly did not regard it as controlling. The federal corporate income tax and the Connecticut sales and use tax serve different purposes and the focus of the law on each is different. See *Wisconsin Valley Trust Co.* v. *Commissioner,* 538 F.2d 730, 732 (7th Cir.), cert. denied, 429 U.S. 1022, 97 S. Ct. 639, 50 L. Ed. 2d 624 (1976).

The commissioner also argues that displaying the prototype at trade shows prior to sale is an intervening use that demonstrates the plaintiff's intention not to make the parts a component part of property to be sold at the time of purchase. Whether the plaintiff intended to use the component parts in its prototype for pure research is a question of fact. "On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. See Practice Book [§ 4061]. . . . [W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. That is the standard and scope of this court's judicial review of decisions of the trial court." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

Applying that standard to the present case, we do not find that the decision of the trial court was clearly erroneous. The trial court found that all prototype

machines were sold to customers, thereby resolving against the commissioner the issue of whether the display at a trade show constituted an intervening use that disqualified the parts from the statutory exemption. It also is significant that the court found, inter alia, that the plaintiff did not conduct research, just development. The trial court properly concluded that the plaintiff's purchase of component parts for prototype camera systems qualified for the exemption from the use tax under General Statutes § 12-412 (18).

### III

In its cross appeal, the plaintiff claims that the court improperly concluded that its camera systems were subject to a sales tax when purchased by a commercial user. This tax exemption argument is grounded on the theory that the plaintiff's camera systems, in the hands of its customers, qualify as machinery used directly in a manufacturing production process within the meaning of General Statutes § 12-412 (34).[7]

In order to evaluate whether the plaintiff's commercial users engage in manufacturing with these camera systems, we look to § 12-426-11b (a) (10) of the Regulations of Connecticut State Agencies for guidance. This section defines "manufacturing" in part as an "integrated series of operations which places personal property in a form, composition or character different from that in which it was acquired . . . ."[8] The regu-

---

[7] General Statutes § 12-412 provides in pertinent part: "Taxes imposed by this chapter shall not apply to . . . (34) MACHINERY USED IN MANUFACTURING . . . . Sales of and the storage, use or other consumption of machinery used directly in a manufacturing . . . production process. The word 'machinery' as used in this subsection means the basic machine itself, including all of its component parts and contrivances, such as belts, pulleys, shafts, moving parts, operating structures and all equipment or devices used or required to control, regulate or operate the machinery, but excluding office equipment or data processing equipment other than numerically controlled machinery used directly in the manufacturing process."

[8] Section 12-426-11b (a) (10) of the Regulations of Connecticut State Agencies provides: " 'Manufacturing' shall mean the performance as a business

lation expressly requires that "[t]he change in form, composition or character must be a *substantial change* and it must result in a *transformation of property into a different product having a distinctive name, nature and use.*" (Emphasis added.) Id.

A brief description of the operation of the plaintiff's camera system is necessary at this point. According to the plaintiff, its camera transforms a colorless photostated visual image into a full color slide complete with special effects. This process is accomplished by exposing the photostated image to the raw film contained in the plaintiff's camera system. The raw film while inside the plaintiff's machine is then subjected to light, color, and other special effects. Although this may be an overly simplified description of the internal workings of a sophisticated piece of equipment, stripped of technical jargon, the process is surprisingly similar, if not identical, to a process known as taking a picture. Such a process cannot realistically be labeled manufacturing by this court. We agree with the trial court that it is film that goes into the camera and film that comes out. The fact that the exposed film is then cut and placed into cardboard slide frames does not change its form, composition or character in such a manner as to qualify for a tax exemption.

A similar "manufacturing" tax exemption issue was considered in *Connecticut Water Co.* v. *Barbato,* 206 Conn. 337, 537 A.2d 490 (1988). In that case, the Connecticut Water Company argued that its processing

of an integrated series of operations which places personal property in a form, composition or character different from that in which it was acquired for sale in the regular course of business by the manufacturer. The change in form, composition, or character must be a substantial change, and it must result in a transformation of property into a different product having a distinctive name, nature and use. Operations such as compounding or fabricating are illustrative of the types of operation which may result in such a change. 'Manufacturing' is an activity which shall occur solely at an industrial plant."

system which converted raw water into potable water constituted manufacturing. The water processing system added chemical compounds, removed solids and corrected the water's odor and taste. In rejecting the tax exemption claim, the Supreme Court held that "[d]espite the complexity of the equipment and procedures used by the plaintiff to render its water potable, the fact remains that the plaintiff's eventual product is still water and it does not carry the 'distinctive name [and] nature' required by the regulation. Therefore, the transformation of raw water into finished, potable water at the company's treatment plant is not a process that constitutes 'manufacturing' within the meaning of General Statutes § 12-412 (34)." Id., 344. Similarly, in the present case, the transformation of unexposed film into exposed film does not constitute manufacturing. See *Plastic Tooling Aids Laboratory, Inc.* v. *Commissioner,* 213 Conn. 365, 567 A.2d 1218 (1990).

Statutes creating tax exemptions must be strictly construed against the party claiming the exemption. *Stop 'N Save, Inc.* v. *Department of Revenue Services,* 212 Conn. 454, 462, 562 A.2d 512 (1989). We conclude that the trial court properly found that the plaintiff's camera systems are not exempt sales of machinery used directly in the manufacturing production process within the meaning of General Statutes § 12-412 (34).

The judgment is affirmed.

In this opinion the other judges concurred.