## STATE OF CONNECTICUT *v.* JAMES E. MILTON
## (9600)

DUPONT, C. J., DALY and FOTI, Js.

Argued November 5, 1991—decision released February 18, 1992

*J. Brendan Sharkey,* special public defender, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *John Smriga,* assistant state's attorney, for the appellee (state).

DUPONT, C. J. The defendant appeals from the judgment of conviction of possession of narcotics in violation of General Statutes § 21a-279 (a), possession of a sawed-off shotgun in violation of General Statutes § 53a-211 (a), and possession of a machine gun in violation of General Statutes § 53-202 (c). The defendant claims that the trial court improperly denied his motion to dismiss filed on the basis of the failure to notify him of his statutory speedy trial rights pursuant to General Statutes §§ 54-82c and 54-82d.[1] We affirm the judgment of conviction.

---

[1] "[General Statutes] Sec. 54-82c. PRISONER'S RIGHT TO SPEEDY TRIAL ON PENDING CHARGES. (a) Whenever a person has entered upon a term of imprisonment in a correctional institution of this state and, during the continuance of the term of imprisonment, there is pending in this state any untried indictment or information against such prisoner, he shall be brought to trial within one hundred twenty days after he has caused to be delivered, to the state's attorney or assistant state's attorney of the judicial district or geographical area, in which the indictment or information is pending, and to the appropriate court, written notice of the place of his imprisonment and his request for final disposition to be made of the indictment or information. For good cause shown in open court, the prisoner or his counsel being present, the court may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the warden, community correctional center administrator or other official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner and any decisions of the parole board relating to the prisoner.

The defendant was arrested on the charges underlying his conviction on July 15, 1989. Having failed to make bond, the defendant was held in custody at the North Avenue correctional facility in Bridgeport. On December 20, 1989, while those charges were still pending, the defendant was sentenced to a four year prison term for an unrelated charge and immediately began serving his sentence at the Somers correctional institution. Thereafter, the defendant was transferred to correctional facilities in Enfield and Cheshire before being transferred back to the Bridgeport facility on April 6, 1990. On July 25, 1990, the defendant filed the motion to dismiss that is the subject of this appeal. At the start of the defendant's trial on July 26, 1990, he was still serving the four year prison term, which had commenced 218 days earlier.

At the hearing on the motion to dismiss, additional facts were adduced. The department of correction had maintained a personal inmate file on the defendant since his incarceration on the unrelated charge on

"(b) The written notice and request for final disposition referred to in subsection (a) hereof shall be given or sent by the prisoner to the warden, community correctional center administrator or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

"(c) The warden, community correctional center administrator or other official having custody of the prisoner shall promptly inform him in writing of the source and contents of any untried indictment or information against him concerning which the warden, administrator or other official has knowledge and of his right to make a request for final disposition thereof.

"(d) Escape from custody by the prisoner subsequent to his execution of the request for final disposition referred to in subsection (a) hereof shall void the request."

"[General Statutes] Sec. 54-82d. DISMISSAL OF CHARGES ON FAILURE TO GRANT PRISONER SPEEDY TRIAL. If an action is not assigned for trial within the period of time as provided in section 54-82c, no court of this state shall any longer have jurisdiction thereof, nor shall the untried indictment or information be of any further force or effect, and the court shall enter an order dismissing the same."

December 20, 1989. Such a file follows an inmate from one institution to another as he is transferred through the facilities of the correctional system. The defendant's inmate file contained a "rap sheet." The rap sheet indicated the charges then pending against the defendant arising out of his July 15, 1989 arrest. The file contained no indication that any correction official had given the defendant notice of his speedy trial rights under General Statutes § 54-82c. The defendant testified that he was never notified by any warden or other prison official of his speedy trial rights under § 54-82c while incarcerated at the Somers, Enfield, Cheshire or Bridgeport correctional facilities. The warden of the North Avenue correctional facility in Bridgeport testified that, pursuant to advice received from the office of the attorney general, inmates are not notified of their § 54-82c speedy trial rights concerning charges that are already pending and for which the inmate has already been arraigned at the time the inmate commences his term of imprisonment.[2] The defendant never requested a final disposition of the charges against him pursuant to § 54-82c. Neither the state nor the defendant introduced any evidence regarding the effect, if any, the pending charges may have had on the conditions of the defendant's incarceration, or on his ability to participate in rehabilitative or other programs while in prison.

In its memorandum of decision, the trial court articulated the following reasons in support of its decision to deny the defendant's motion to dismiss: (1) there was nothing in the defendant's inmate file that would have put any correction official on notice of any untried indictment or information against the defendant; (2) correction officials did not have to provide notice to the defendant pursuant to § 54-82c because he had already been arraigned on the subject charges; (3) the defend-

---

[2] At oral argument in this court, the state indicated that no such written advice was ever given by the attorney general.

ant never requested final disposition of the pending charges pursuant to § 54-82c; and (4) constitutional speedy trial analysis did not require dismissal of the charges against the defendant.

This appeal revolves about the statutory interpretation of General Statutes § 54-82c. The brief legislative history of the bill that became § 54-82c indicates that its purpose was to "allow a prisoner who was committed to jail to ask that he be tried within 120 days on any information or indictment pending against him." 7 S. Proc., Pt. 6, 1957 Sess., p. 3712, remarks of Senator John H. Filer; *Craig* v. *Bronson,* 202 Conn. 93, 96, 520 A.2d 155 (1987). The rationale of affording speedier trials to those serving criminal sentences than to those not yet incarcerated has been previously explored by this court. See *State* v. *Harris,* 14 Conn. App. 244, 249, 540 A.2d 395 (1988); *State* v. *Foshay,* 12 Conn. App. 1, 530 A.2d 611 (1987). The rationale has also been considered by other courts.

The United States Court of Appeals for the Second Circuit has thoroughly analyzed the concerns that arose because of the prior system that allowed detainers to remain on file against a prisoner without disposition, concerns that eventually led to the drafting and adoption of interstate and intrastate detainer statutes across the country. "The disadvantages and potential abuses of this system were many. Prison authorities often accorded detainers considerable weight in making decision with respect to the terms and conditions of the prisoner's incarceration and release on parole. Sometimes the prisoner would automatically be held under maximum security. Sometimes he would be ineligible for special work programs, athletic programs, release for visits to relatives' death beds or funerals, or special minimum security facilities. Often detainers precluded the granting of parole. . . .

"In addition, the pending charges forming the basis of a detainer might themselves significantly impede the development of a coherent program for the prisoner's punishment and rehabilitation. . . . [P]arole boards and prison authorities found it difficult to formulate the prisoner's rehabilitative program, since they were forced to act without knowing whether the prisoner would be convicted on the other pending charges.

"This same uncertainty also often adversely affected the prisoner's attitude towards his own rehabilitation. . . .

"Moreover, the prisoner subject to a detainer was handicapped by delay in preparing for trial of the charge upon which it was based. As in all cases of trial delay, witnesses might die, evidence disappear, and memories fade." *United States* v. *Ford,* 550 F.2d 732, 737–40 (2d Cir. 1977), aff'd sub nom. *United States* v. *Mauro,* 436 U.S. 340, 98 S. Ct. 1834, 56 L. Ed. 2d 329 (1978).

Similar concerns are reflected in the legislative history underlying General Statutes § 54-82c, our intrastate detainer statute. See Conn. Joint Standing Committee Hearings, General Law, Pt. 1, 1957 Sess., pp. 229–30, remarks of Representative Marjorie D. Farmer; id., pp. 230–31, remarks of Howard Jacobs.

General Statutes § 54-82c is patterned after General Statutes § 54-186, which is known as the Interstate Agreement on Detainers (IAD) and which applies to prisoners who are incarcerated in one state and face charges in another. "A primary purpose behind both statutes is to alleviate problems posed by outstanding detainers on efforts at prisoner rehabilitation. At committee hearings on the bill that became General Statutes § 54-82c, Representative Marjorie D. Farmer noted that '[a]ny program of rehabilitation which is undertaken in a penal institution is ineffective if a man

has time hanging over his head.' Conn. Joint Standing Committee Hearings, General Law, Pt. 1, 1957 Sess., p. 229. Similarly, proponents of the Interstate Agreement noted that the uncertainty and anxiety accompanying outstanding charges often inhibits prisoner response to training programs and thwarts efforts at rehabilitation. See *United States* v. *Mauro,* supra, 359; see also Conn. Joint Standing Committee Hearings, Federal and Intergovernmental Relations, 1957 Sess., pp. 37–42. General Statutes § 54-82c, like § 54-186, then, provides a mechanism by which an inmate can remove the uncertainty of pending charges and can compel a speedy resolution of those charges." *State* v. *Foshay,* supra, 11–12; see also *State* v. *Harris,* supra, 248–49.

In order to further the purposes of § 54-82c, the statute places clear and unambiguous obligations on state correction officials. Whenever a person has begun a term of imprisonment in a correctional institution in this state, § 54-82c (c) provides in pertinent part that a "warden, community correctional center administrator or other official having custody of the prisoner shall promptly inform him in writing of the source and contents of any untried indictment or information against him concerning which the warden, administrator or other official has knowledge and of his right to make a request for final disposition thereof." This provision, by its very terms, places two related but independent obligations on correction officials: (1) to inform a prisoner of charges pending against him; and (2) to inform the prisoner of his right to request speedy disposition of those charges.

In order to dispose of this appeal, we must decide whether the correction officials failed to fulfill both obligations of the statute, and whether these obligations must be fulfilled even if the defendant is aware of the charges pending against him. If the former questions

are both answered in the affirmative, we must also decide whether the charges against the defendant must be dismissed.

## I

### THE OBLIGATION TO INFORM

The trial court found that "[t]here is nothing in [the defendant's personal inmate] file that would have put any warden, community correctional center administrator or any other official having custody of the prisoner on notice of any untried indictment or information against him." If this finding is correct, then the defendant's claims necessarily fail because the notification requirements of subsection (c) of the statute are made operable only when a correctional official "has knowledge" of "any untried indictment or information" against a prisoner. We conclude that this finding is not supported by the evidence of record, and, therefore, it cannot stand.

"On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. See Practice Book § [4061]. . . . [W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980); *Forox Corporation* v. *Groppo,* 24 Conn. App. 72, 77, 585 A.2d 707 (1991).

At the hearing on the motion to dismiss, Warden Edward Davies testified that the defendant's inmate file, which was maintained since the date of his initial imprisonment, at each correctional institution to which the defendant was transferred, contained a rap sheet. The rap sheet indicated the precise charges on which

the defendant was arrested on July 15, 1989, and indicated that those charges were pending. Contrary to the finding of the trial court, the undisputed evidence shows that correction officials had notice of the charges pending against the defendant.[3]

The state next argues that while the rap sheet may have provided correction officials with notice of the charges pending against the defendant, it did not provide knowledge of "the source and contents of any untried . . . information" within the meaning of § 54-82c. The state claims that something more than awareness on the part of the warden that a case is pending is required to activate the remedial provisions of the statute. That something, according to the state, is a detainer.

The word detainer does not appear in the text of § 54-82c. Our courts, however, have incorporated the

[3] The rap sheet referred to by Warden Edward Davies in his testimony was never introduced into evidence or marked for identification. The state contends that our review of this document is crucial and that the defendant has not satisfied his obligation to provide this court with an adequate record for review. Practice Book § 4061. According to the state, a determination of whether the rap sheet contained "the source and contents of any untried . . . information" requires our review of the document. We do not agree.

First, the testimony of Davies was specific as to the content of the defendant's rap sheet. Reading from the rap sheet contained in the defendant's personal inmate file, he was able to state the exact charges still pending against the defendant arising out of his July 15, 1989 arrest. Our review of the document itself is unnecessary where there was testimony concerning the contents of the document and where the veracity of those contents is undisputed.

Second, Davies testified that this information concerning the pending charges, which was contained in the defendant's inmate file, was available to any correctional official having custody of the defendant. The file was created on December 20, 1989, and it followed the defendant as he was transferred as a state prisoner within the correctional system. The inmate file, therefore, adequately notified correctional officials of the July 15, 1989 charges against the defendant and their pending status beginning on December 20, 1989.

term detainer in the intrastate act. See, e.g., *Craig* v. *Bronson,* supra, 104 (referring to § 54-82c as a "detainer statute"); *State* v. *Toste,* 198 Conn. 573, 585–86, 504 A.2d 1036 (1986) (§ 54-82c provides "a statutory method by which an inmate of a Connecticut penal institution who has a detainer placed against him can request and receive an expedited disposition of pending charges"); *State* v. *Foshay,* supra, 11 (noting that a primary purpose behind § 54-82c "is to alleviate problems posed by outstanding detainers"). The use of the word detainer in these cases is warranted by the title of the 1957 legislative enactment, Public Acts 1957, No. 551, now codified at § 54-82c, and its legislative history. Public Acts 1957, No. 551, is entitled "An Act Concerning Disposition of Detainers within this State." House Bill 683, which became Public Acts 1957, No. 551, contained the following statement of purpose: "To make it possible for a prisoner to institute disposition of detainers." Both the title of a bill and its statement of purpose are valuable aids to construction. *Zichichi* v. *Middlesex Memorial Hospital,* 204 Conn. 399, 405, 528 A.2d 805 (1987). Moreover, Public Acts 1957, No. 551, was modeled after a proposal of the Committee of State Officials on Suggested State Legislation of the Council of State Governments in its 1957 program, which also advocated adoption of an Agreement on Detainers for prompt disposition of charges against out-of-state prisoners. Conn. Joint Standing Committee Hearings, General Law, Pt. 1, 1957 Sess., pp. 229–30, remarks of Representative Marjorie D. Farmer. A review of the Council of State Governments report leaves little doubt that the intrastate act is intended to apply to detainers, as does its interstate counterpart, which is replete with use of the term detainer. See Council of State Governments, Suggested State Legislation Program for 1957, pp. 74–86.

Having concluded that a detainer is required to invoke the notification provisions of § 54-82c (c), we now turn to the question of whether the rap sheet in the defendant's inmate file constituted a detainer for purposes of the intrastate act. We have found no case that presents this issue for resolution and, therefore, we know of no case that holds that a rap sheet is or is not the equivalent of a detainer. Interpretations of the interstate agreement on detainers (IAD), however, are helpful in our resolution of this issue. There is abundant authority for the proposition that the intrastate and the interstate legislation should be similarly interpreted because they impliedly have the same legislative intent; *Craig* v. *Bronson,* supra, 104–105; *State* v. *Foshay,* supra, 12–13; although we recognize that there may sometimes be reason to interpret the intrastate legislation on detainers differently from the interstate legislation. *State* v. *Anonymous (1980-6),* 36 Conn. Sup. 327, 331–32, 419 A.2d 904 (1980).

The IAD contains no definition of the word detainer. *United States* v. *Mauro,* 436 U.S. 340, 359, 98 S. Ct. 1834, 56 L. Ed. 2d 329 (1978). The United States Supreme Court has accepted the congressionally approved definition of a detainer as " 'a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction.' " Id., quoting H.R. Rep. No. 91-1018, p.2 (1970), and S. Rep. No. 91-1356, p.2 (1970). A detainer, however, need not take any particular form; its purpose is to provide "written notice to prison authorities . . . that charges are pending against the prisoner." *Gilbreath* v. *State,* 651 P.2d 699, 701 (Okla. Crim. App. 1982); see also *United States* v. *Mauro,* supra, 358 ("a detainer merely puts the officials of the institution in which the prisoner is incarcerated on notice that the prisoner is wanted in another jurisdiction for trial upon his release from

prison"); *Smith* v. *Liburdi,* 26 Conn. App. 254, 256, 600 A.2d 17 (1991). Thus, a letter from a police department to prison officials; *People* v. *Browning,* 108 Mich. App. 281, 291–92, 310 N.W.2d 365 (1981); a letter from the clerk of court to prison officials; *People* v. *Beamon,* 83 Mich. App. 121, 132, 268 N.W.2d 310 (1978); and a letter from a prosecuting attorney to prison officials; *Riley* v. *State,* 180 Ga. App. 409, 412, 349 S.E.2d 274 (1986); have all been held to fall within the IAD definition of a detainer. This view of what constitutes a detainer accords well with the requirement that the IAD "shall be liberally construed so as to effectuate its purposes." General Statutes § 54-186, Article IX.

These authorities serve as a guide for the answer to the question of whether the rap sheet in the defendant's prison inmate file constituted a detainer for purposes of § 54-82c. See *Remick* v. *Lopes,* 203 Conn. 494, 498, 525 A.2d 502 (1987). The rap sheet in this case provided prison officials with information concerning the precise charges pending against the defendant as a result of his July 15, 1989 arrest. Although the informal nature of this notice to prison officials may have left some questions unanswered concerning the source or contents of the untried information in question, we conclude that, in the context of the intrastate act, the rap sheet in this case sufficed as a detainer. Should the correction officials have desired more information, a minimal effort would have allowed them to gather any additional data about the intrastate charges. To require more formal notice in order to invoke the remedial provisions of the intrastate act, as is urged by the state, would exalt form over substance. The notice, here the rap sheet, informed prison officials of the continuing prosecution against the defendant. The spectre of that prosecution for the pending charges was sufficient to produce " 'the uncertainty and anxiety accompanying outstanding charges [that] often inhibits prisoner

response to training programs and thwarts efforts at rehabilitation," which the act was intended to address. *State* v. *Foshay,* supra, 11.

The rap sheet in the defendant's inmate file, which came to the attention of correctional officials having custody of him, was sufficient to serve as a detainer.

## II

### RELEVANCE OF THE PRISONER'S KNOWLEDGE OF THE PENDING CHARGES

The defendant claims that because he was not notified of the charges pending against him, he could not request a final disposition of the pending charges, and that his knowledge of the pending charges or his arraignment as to those charges did not exonerate the correction officials of their obligation to inform him of his right to request a speedy trial. The trial court concluded that the failure of correction officials to notify the defendant pursuant to § 54-82c (c) was not due to any malfeasance on the part of correction officials, "but rather compliance with advice from the attorney general's office indicating that the notice required by statute applied only to untried indictments or informations the existence of which a prisoner might be unaware."[4] Because we conclude that notice to a prisoner by correction officials of the right to request speedy disposition of pending charges is required notwithstanding the prisoner's awareness of the charges, we cannot sustain the decision of the trial court on this ground.

By its terms, § 54-82c (c) has placed the obligation on correction officials to notify prisoners of their particular speedy trial rights. To allow prison officials to escape this duty on the basis of a prisoner's awareness of the charges against him would be contrary to the

---

[4] See footnote 2, supra.

plain and unambiguous language of the statute. The duty would have little meaning if it did not exist when a prisoner is aware that charges against him remain outstanding, since such an awareness is almost always present. Nor has the legislature made a distinction between prisoners who know little of the criminal system and those who have been prisoners on many occasions. In fact, the purpose of the act is most likely to be best served when the prisoner is not a stranger to incarceration.

"On the few occasions that we have had the opportunity to apply General Statutes [§ 54-82c] . . . we have required strict compliance with the statutory notice procedures." *State* v. *Toste,* supra, 588. In addition, there is nothing in the record on which to conclude, nor does it necessarily follow, that the defendant's knowledge of the charges against him provided him with any information concerning his speedy trial rights pursuant to § 54-82c or the statutory method of invoking those rights. To conclude otherwise would nullify the separate and independent obligation placed by the statute on prison officials "promptly [to] inform [a prisoner] in writing . . . of his right to make a request for final disposition" of any untried indictment or information against him. General Statutes § 54-82c (c). "Because of the importance of this requirement, a [warden's] failure to fulfill the duties imposed by [§ 54-82c] is itself a violation of the [detainer statute], independent of any violation of the requirement that the prisoner be brought to trial within [120] days of receipt of the prisoner's request by the court and the prosecuting official . . . ." *People* v. *Trancoso,* 776 P.2d 374, 377-78 (Colo. 1989); *People* v. *Higinbotham,* 712 P.2d 993, 996 (Colo. 1986); see also *State* v. *Fitch,* 37 Ohio App. 3d 159, 162, 524 N.E.2d 912 (1987).

The failure of correction officials to notify the defendant of the charges pending against him and of his right

to demand speedy disposition of the pending charges, violated the provisions of the act, regardless of his knowledge of the pending charges.

## III

### THE REMEDY

The defendant argues that dismissal of the charges against him is the penalty to be exacted from the state for its violation of General Statutes § 54-82c.

General Statutes § 54-82d[5] provides a remedy of dismissal if the state does not try the defendant within 120 days after the defendant invokes his statutory speedy trial rights and the warden causes the same to be delivered to the court and prosecuting authority. No remedy, however, was expressly created by the legislature for a violation of the notice requirement of § 54-82c (c).[6] In a case involving a delay by New Jersey prison officials in providing a prisoner with IAD forms and forwarding them to Connecticut officials as required by the IAD, our Supreme Court concluded that, in the absence of a statutorily prescribed remedy, "this defendant's right to prompt IAD notification can appropriately be protected by invoking the balancing principles of *Barker* v. *Wingo,* 407 U.S. 514, 530, 92

---

[5] See footnote 1, supra.

[6] Subsections 1 (a) and 1 (b) of the Uniform Mandatory Disposition of Detainers Act are strikingly similar to General Statutes § 54-82c, but subsection 1 (c) of the Uniform Act provides a remedy for the type of statutory violation at issue in this case: "Failure of the [warden, commissioner of correction or other official] to inform a prisoner, as required by this section, within one year after a detainer has been filed at the institution shall entitle him to a final dismissal of the [indictment, information or complaint] with prejudice." 11 Uniform Laws Annotated 328. The Uniform Act was proposed by the National Conference of Commissioners on Uniform State Laws in 1958, one year *after* the enactment of our intrastate act concerning the disposition of detainers. Section 54-82c, however, has been amended in 1961, 1963, 1973, 1974, 1976 and 1980, without providing for a provision similar to that of section 1 (c) of the Uniform Act.

S. Ct. 2182, 33 L. Ed. 2d 101 (1972), which determine when a deprivation of [constitutional] speedy trial rights requires dismissal of criminal charges against a defendant." *State* v. *Herring,* 210 Conn. 78, 89, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989). Because a failure by prison authorities to notify a prisoner of his rights under § 54-82c (c) does not fall within the express terms of § 54-82d, we follow the *Herring* court's reliance on a constitutional speedy trial analysis.

The four factors that form the matrix of an analysis under *Barker* v. *Wingo,* supra, are the length of the delay, the reasons for the delay, the defendant's assertion of his right, and the prejudice to the defendant. Id., 530; *State* v. *Herring,* supra, 89–90; *State* v. *Foshay,* supra, 13. "A balancing test is to be applied on a case by case basis. None of the factors standing alone demands a set disposition; rather it is the total mix which determines whether the defendant's right was violated." *State* v. *Foshay,* supra, 13–14.

In conducting this analysis, however, we recognize that a complete failure to notify the defendant of his statutory rights and how to invoke them, as opposed to a delay in the processing of his request, will skew the four factors found in *Barker* v. *Wingo,* supra. Any analysis must not permit the state to benefit from its statutory violation. "We would be remiss in our obligation to effectuate the . . . purposes and principles [of the intrastate detainer statute] if we were simply to ignore such a violation." *State* v. *Herring,* supra, 89.

First, we examine the length of the delay in the present case. Had the defendant been promptly notified of his statutory speedy trial rights by prison officials as required by § 54-82c, he could have requested speedy disposition of the charges against him as early as the commencement of his term of imprisonment. In

the absence of such notification by prison officials, the calculation of time for statutory speedy trial purposes must be viewed as having commenced upon the triggering of the state's duty to give notice of the right to demand speedy disposition. *State* v. *Fitch,* supra. The length of the delay here, therefore, runs from the date of the defendant's incarceration (December 20, 1989) until the commencement of the defendant's trial (July 26, 1990), a period of seven months. A delay of seven months, while certainly "not an overwhelming period of time" for constitutional speedy trial purposes; *State* v. *Brown,* 172 Conn. 531, 536, 375 A.2d 1024, cert. denied, 434 U.S. 847, 98 S. Ct. 153, 54 L. Ed. 2d 114 (1977); is longer than the 120 day period established by § 54-82c.

Application of the *Barker* balancing test next requires a consideration of the reasons for the delay. As previously noted, the delay was occasioned by the state's noncompliance with the notification requirements of § 54-82c (c). The defendant was not notified of his statutory speedy trial rights because he was a postarraignment, pretrial detainee with respect to the outstanding charges at the time he entered upon a term of imprisonment at a state correctional facility. Warden Edward Davies testified that the failure to comply with § 54-82c (c) reflected a policy involved in such cases. This testimony indicates a deliberate and systematic policy that necessarily undermines a prisoner's speedy trial rights under the statute. As such, this reason for the delay must be weighed heavily against the state. Cf. *Barker* v. *Wingo,* supra, 531.

As to the third *Barker* factor, it goes without saying that the defendant did not vigorously assert his right to a speedy trial under § 54-82c. He first indicated his reliance on § 54-82c when he filed his motion to dismiss on the eve of trial. While our consideration of his failure to seek speedy disposition of the charges against

him pursuant to § 54-82c cannot logically be separated from the failure of prison officials to advise him of his right to do so; see *State* v. *Fitch,* supra; we find it significant that at no time during the pendency of the charges against him did the defendant request a speedy trial to effectuate his separate constitutional speedy trial rights. The failure of the defendant to assert his constitutional right to a speedy trial and the state's failure to notify him of his statutory rights under § 54-82c precludes reliable use of this factor in our analysis. Cf. *Barker* v. *Wingo,* supra, 530 n.30. On the basis of the record before us, therefore, this factor weighs in favor of neither the defendant nor the state. See *Phillips* v. *State,* 650 S.W.2d 396, 400–401 (Tex. Crim. App. 1983).

The final *Barker* factor that we must consider is prejudice caused by the delay. "Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Barker* v. *Wingo,* supra, 532. Our detainer statute, however, was intended to supplement and expand the speedy trial rights of prisoners for reasons distinct from those underlying constitutional speedy trial concerns. Thus, "[w]hen faced with a situation such as is presented here, a court should analyze the implications of the violation for the defendant's prison rehabilitation program as well as the subsidiary concern of the impact of the violation on the defendant's speedy trial rights." *People* v. *Higinbotham,* supra, 998.

The seven month delay here caused the defendant to wait only three additional months beyond the 120 day period set forth in the statute for the disposition of the charges against him. Given that the defendant had only recently commenced a four year prison term, it is very unlikely that any of the concerns involved in the passage of § 54-82c; see *United States* v. *Ford,* supra; would have come into play during the three addi-

tional months of incarceration suffered by the defendant before the disposition of the pending charges. Moreover, the defendant's failure to request a speedy trial pursuant to his constitutional speedy trial rights, coupled with the startling lack of any evidence of record suggesting that he would have invoked his rights under General Statutes § 54-82c had he been properly informed of them, lead us to the conclusion that the effect of the violation of the defendant's rights here was minimal or nonexistent. In light of the lack of any evidence that the conditions of the defendant's incarceration including his ability to participate in particular prison programs was adversely affected by the delay caused by the statutory violation, we must resolve the final *Barker* factor against the defendant.

We recognize that "the linchpin of the speedy trial claim is a showing of prejudice." *State* v. *Lloyd,* 185 Conn. 199, 209, 440 A.2d 867 (1981); see also *State* v. *Herring,* supra, 90; *State* v. *Foshay,* supra, 15. Applying the principles of *Barker* v. *Wingo,* supra, to the facts of this case, we conclude that the appropriate remedy for the violation of the defendant's statutory speedy trial rights is not dismissal of the charges. The trial court properly denied the defendant's motion to dismiss the criminal charges against him.

The judgment is affirmed.

In this opinion the other judges concurred.