JOHN W. COLLERAN ET AL. *v.* SANDRA CASSIDENTO
(10067)

O'CONNELL, NORCOTT and LAVERY, Js.

Argued December 3, 1991—decision released April 21, 1992

*Charles F. Brower,* with whom, on the brief, was *Annmarie E. Bushka,* for the appellant (defendant).

*John W. Colleran,* with whom was *Carl M. Porto,* for the appellees (plaintiffs).

LAVERY, J. This is an appeal from the judgment of the trial court granting an application to vacate an arbi-

tration award based on a lack of notice to the plaintiffs as required by General Statutes § 52-413.

The defendant claims that the trial court improperly granted the plaintiffs' application because (1) the plaintiffs successfully asserted that they were not parties to the arbitration agreement thereby estopping them from later asserting an inconsistent position, (2) the plaintiffs were not parties to the arbitration agreement and, thus, lacked standing to file the application to vacate the arbitration award pursuant to General Statutes § 52-418, and (3) the trial court incorrectly determined that the defendant had claimed that there had been adequate notice to the plaintiffs. We affirm the judgment of the trial court vacating the arbitration award.

Prior to the hearing on the application to vacate, the parties agreed that the trial court could consider all attachments to the briefs as full exhibits.[1] The following facts can be gleaned from the exhibits. Carmel Hollow Associates Limited Partnership is the owner of a large subdivision in Bethlehem. A limited partnership agreement was executed by Whitehead-Mathis, Inc., general partner and owner of 75 percent; John W. Colleran, limited partner and owner of 15 percent; and Robert Patent, limited partner and owner of 10 percent. The agreement was signed on behalf of Whitehead-Mathis, Inc., by H. Sean Mathis, president. The agreement, signed in 1986, contained a buyout provision that set forth the procedure to be followed when a partner wanted to dispose of his or its interest.

In 1988, a "SECOND ADDENDUM TO PARTNERSHIP AGREEMENT" (the addendum) was executed

---

[1] These exhibits consisted of numerous letters and facsimile transmissions between the parties and the American Arbitration Association, as well as various arbitration related documents. This was the only evidence before the court. No oral testimony was offered.

by Whitehead-Mathis, Inc., and the defendant.[2] The addendum was also signed on behalf of Whitehead-Mathis, Inc., by H. Sean Mathis, president. On March 29, 1990, the defendant filed a demand for arbitration in which she stated that she was a partner in Carmel Hollow Associates. The demand named "Partners in Carmel Hollow Associates, Thomas Donegan, Jean Donegan, John W. Colleran, Esq., H. Sean Mathis, Whitehead-Mathis, Inc., and Robert Patent" as respondents. She characterized the dispute as one to determine "the method, procedure and valuation of the claimant's interest in Carmel Hollow Associates." The defendant sought "that the value of [her] interest in the partnership be determined for purposes of the mandatory buyout required by the agreement." The defendant based her demand not on the original partnership agreement, but on the addendum.[3] The plaintiffs, John

---

[2] The "SECOND ADDENDUM TO PARTNERSHIP AGREEMENT" provides: "WHEREAS Whitehead-Mathis, Inc., is the owner of record of a seventy-five percent (75%) interest in Carmel Hollow Associates, and is a signatory to a Partnership Agreement dated December 4, 1986 between Whitehead-Mathis, Inc., John Colleran and Robert Patent, Whitehead-Mathis agrees and all parties to this Addendum agree that all relevant terms and conditions of the Partnership are incorporated by reference herein.

"Now Whitehead-Mathis, Inc. acting through its President who is duly authorized, states and agrees as follows:

"1. Whitehead-Mathis, Inc., is the actual owner of only 25% of the partnership known as Carmel Hollow Associates. Although it appears as the owner of a 75% interest herein.

"2. It is holding, in trust, interest in Carmel Hollow Associates as follows:

"25% interest for the benefit of Sandra Levy [Cassidento] so that upon the execution of this document, Whitehead-Mathis is the owner of a fifty percent (50%) interest in Carmel Hollow Associates.

"In the event that there is a dispute among the signatories to this Addendum, each party waives its right to a judicially enforced sale of its partnership interest, but agrees to binding arbitration by the American Arbitration Association as to the value of each interest herein. Once said value has been determined, the purchasing and remaining partners shall be free to offer the property to any other purchaser at fair market value."

[3] We note, however, that the addendum stated that "all relevant terms and conditions of the Partnership are incorporated by reference herein."

Colleran and Thomas Donegan, were served with the demand for arbitration along with the other respondents.

A great deal of communication between the plaintiffs and the American Arbitration Association (AAA) regarding whether the plaintiffs were proper parties to the arbitration followed. On May 11, 1990, the AAA determined that there was an issue of arbitrability and that it would proceed with arbitration "in accordance with the document containing the arbitration provision." The AAA went on to state that "the parties to that document are Whitehead-Mathis, Inc., and Sandra Levy (Cassidento)."

The AAA and the defendant's attorney, however, continued to refer to the case as *Sandra Levy Cassidento* v. *Donegan et al.* Further, the plaintiffs continued to receive all the communications that a party to an arbitration normally receives, including information concerning arbitrator selection and hearing scheduling.

On September 21, 1990, an unofficial source informed the plaintiffs that the case was scheduled for a hearing on September 27, 1990. They immediately contacted the AAA, asserting that they had never been removed as parties. They expressed concern that the defendant mistakenly believed that a final decision would be binding on them pursuant to the partnership agreement's buyout provision because Whitehead-Mathis, Inc., had signed as general partner of the limited partnership. The letter further stated that the plaintiffs had insufficient time to prepare for the hearing, and that they had received no official notice of the hearing. The plaintiffs requested that the hearing be postponed until a proper decision could be made as to who the parties were and who would be bound by any decision.

On September 24, 1990, Colleran again contacted the AAA, this time sending a prepared amended submission to be signed by the defendant.[4] By this amended submission, the plaintiffs sought to make clear that the proceeding was against only Whitehead-Mathis, Inc., and not the plaintiffs, the partnership, or Whitehead-Mathis, Inc., in its capacity as general partner. The defendant refused to sign the amended submission.

The next day, Colleran again contacted the AAA, stating, in part: "Attorney Brower has refused to sign [the amended submission]. Regardless of the ambiguous wording in his last two letters, I am still concerned that he is attempting to circumvent the ruling of the Association by arguing that the original document was signed by Whitehead-Mathis, Inc., as my *agent*, and therefore he is still looking for an arbitration decision that would be binding upon me. His absolute refusal to sign the Amended Submission seemed to verify that position." (Emphasis in original.) In this letter, he again requested that the hearing be postponed until a decision could be made as to the proper parties to the arbitration proceeding, and until the plaintiffs could sufficiently prepare for the hearing.

The AAA refused the plaintiffs' request, and the hearing took place as scheduled, and the arbitrator entered an award of $227,000 against Whitehead-Mathis, Inc., and H. Sean Mathis. It also ordered that the arbitrator's fee, administration fees and expenses

---

[4] The amended submission provided in part: "The undersigned hereby deletes from the Demand for Arbitration dated March 29, 1990, Thomas Donegan, Jean Donegan, John W. Colleran and Robert Patent as parties to the Arbitration. . . . [N]o claim is being made that Whitehead-Mathis, Inc., was acting in any manner so as to bind Carmel Hollow Associates or any of its partners other than Whitehead-Mathis, Inc., and no claim is being made that Carmel Hollow Associates, or any of its partners, other than Whitehead-Mathis, Inc., are in any way involved in any 'mandatory buyout.' "

should all be borne equally "by the parties." The plaintiffs then filed an application to vacate the arbitration award pursuant to General Statutes § 52-418. The plaintiffs based the application on General Statutes § 52-413, asserting that they did not receive notice of the hearing and that the AAA refused to postpone the hearing.[5]

At the hearing on the application to vacate, the defendant's attorney mentioned, for the first time, that an "Amended Demand for Arbitration" had been filed on September 27, 1990. There was no certification on the document and none of the individual respondents or their attorneys had knowledge of such a document. Likewise, the AAA had no knowledge of the document, as it was nowhere reflected in the official file. It was, however, in the possession of the arbitrator. The document purported to substitute the following respondents in place of the original respondents: "Respondents: Whitehead-Mathis, Inc., and/or Litchfield Asset Holdings, successor to Whitehead-Mathis, Inc., *a corporate general partner of Carmel Hollow Associates.*" (Emphasis added.) The defendant had also filed an application for an order confirming the award in which she requested that the trial court confirm the $227,000 award against Whitehead-Mathis, Inc., "*a corporate general partner of Carmel Hollow Associates.*" (Emphasis added.)

At the hearing on the application to vacate, the parties conceded that the arbitrator did not notify the

---

[5] General Statutes § 52-413 provides: "HEARING; TIME AND PLACE; ADJOURNMENT. The arbitrators to an arbitration matter shall appoint a time and place for the hearing and notify the parties thereof. Upon application of either party and for good cause shown, the arbitrators shall postpone the time of the hearing. The arbitrators may adjourn any hearing, from time to time, as may be necessary. Any postponement or adjournment shall not extend the time, if any, fixed in the arbitration agreement, for rendering the award."

plaintiffs of the arbitration hearing. The trial court granted the plaintiffs' motion to vacate on the ground that the plaintiffs were not given notice of the hearing as required by General Statutes § 52-413. No motion for articulation was sought by the defendant.

On appeal, the defendant does not claim that the plaintiffs received notice, but rather that the plaintiffs should be estopped from attacking the arbitration award by reason of their successful request to the AAA to be removed as parties.

The law of estoppel was set forth in *Reinke* v. *Greenwich Hospital Assn.*, 175 Conn. 24, 392 A.2d 966 (1978), which also involved an arbitration situation.[6] " 'There are two essential elements to an estoppel—the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief, and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done.' . . ." (Citations omitted.) Id., 28; *Hanover Ins. Co.* v. *Fireman's Fund Ins. Co.*, 217 Conn. 340, 351, 586 A.2d 567 (1991). Further, " 'it is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge.' . . . " (Citations omitted.) *Reinke* v. *Greenwich Hospital Assn.*, supra, 28–29; *O'Sullivan* v. *Bergenty*, 214 Conn. 641, 650, 573 A.2d 729 (1990). There is no merit to the defendant's claim of estoppel.

---

[6] In *Reinke* v. *Greenwich Hospital Assn.*, 175 Conn. 24, 392 A.2d 966 (1978), prior to the arbitration hearing the parties orally agreed that it was not necessary for the arbitrator to take an oath. The unsuccessful party, however, applied to the trial court to vacate the award, and it was vacated. Our Supreme Court affirmed the trial court's judgment because the waiver was not in writing as specifically required by the relevant provisions of the General Statutes.

The plaintiffs failed to act in a manner calculated or intended to mislead the defendant. Rather, the plaintiffs' position, as evidenced by the exhibits, was clear—any agreement that existed between the defendant and Whitehead-Mathis, Inc., was not binding on the partnership. The plaintiffs went to great lengths to bring their position home, both to the defendant and to the AAA.

Colleran sought clarification from both the defendant and AAA as to whether the defendant sought to bind the plaintiffs, even requesting a postponement of the hearing if it was the defendant's position that the agreement between the defendant and Whitehead-Mathis, Inc., bound the partnership. Colleran made this position perfectly clear when he submitted the amended submission to the defendant and to the AAA. The letter from the AAA that the defendant asserts removed the plaintiffs from the arbitration stated only that "[w]e will proceed with further administration of this matter in accordance with the document containing the arbitration provision. The parties to that document are Whitehead Mathis, Inc., and Sandra Levy (Cassidento)." This can hardly be regarded as a definitive decision by the AAA that the plaintiffs were not parties to the arbitration and would not be bound by the arbitrator's decision, especially in light of the language of the addendum itself that "all relevant terms and conditions of the Partnership are incorporated by reference herein."

From the plaintiffs' letters to the defendant and the AAA, it is evident that the plaintiffs were not misleading the defendant. They zealously sought to confirm that the defendant was not seeking to bind the partnership. After a thorough examination of the documents that were admitted as exhibits before the trial court, we conclude that the defendant's claim of estop-

pel is not supported by the evidence. *Reinke* v. *Greenwich Hospital Assn.,* supra.

The defendant's next claim is that the plaintiffs lack standing to apply to vacate the arbitration award within the meaning of General Statutes § 52-418 because they were not parties to the arbitration agreement or the arbitration proceedings.[7] This claim is also without merit. The defendant's demand for arbitration explicitly named the plaintiffs as parties. The defendant's amended demand for arbitration named "Whitehead-Mathis, Inc., and/or Litchfield Asset Holdings, successor to Whitehead-Mathis, Inc., a corporate General Partner of Carmel Hollow Associates." While the original demand explicitly named the plaintiffs as parties, the second demand implicated the plaintiffs by naming Carmel Hollow Associates' general partner as a party.

The defendant claims that the agreement (the addendum) was between the defendant and Whitehead Mathis, Inc., and not between the defendant and the partnership and, thus, the plaintiff should not be considered parties to the arbitration. The correspondence from the plaintiffs indicated their position that the partners and the partnership were not bound by the agreement between the defendant and Whitehead-Mathis, Inc. The plaintiffs wanted to present their argument to the arbitrator so as to avoid any potential liability.[8]

The plaintiffs were named as parties by the defendant. An amended submission naming the general partner as respondent was not filed by the defendant until

[7] General Statutes § 52-418 provides that only a "party" to an arbitration may make an application to Superior Court to vacate the arbitration award.

[8] The plaintiffs correctly believed that if an award was made against the general partner or partnership they would be liable. *Dayco* v. *Fred T. Roberts & Co.,* 192 Conn. 497, 504, 472 A.2d 780 (1984).

the date of the hearing. Section 52-413 requires the arbitrator to give notice to the parties of the time and place for the hearing. It is undisputed that neither the arbitrator nor the AAA sent the plaintiffs, named parties to the arbitration proceeding, notice of the hearing as required by General Statutes § 52-413.[9] Consequently, the application to vacate was properly granted.

Finally, the defendant claims that the trial court incorrectly found that her position was that there had been adequate notice to the plaintiffs. The defendant quotes that portion of the memorandum of decision that states "[t]he defendant claims that the plaintiffs were aware of the arbitration hearing by reason of correspondence attached." The defendant asserts that this statement by the trial court indicates that the court failed to read the exhibits attached to her memorandum. We disagree. Perhaps the defendant failed to make her position clear to the court. No motion for articulation was filed. Given the numerous exhibits before the court, and the lack of testimony offered by either party, we conclude that the facts as found in the memorandum of decision were adequately supported by the evidence. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980); *Forox Corporation* v. *Groppo,* 24 Conn. App. 72, 77, 585 A.2d 707 (1991).

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] In *Bennett* v. *Meader,* 208 Conn. 352, 364, 545 A.2d 553 (1988), our Supreme Court concluded that there must be strict adherence to all the statutory requirements of General Statutes §§ 52-408 through 52-424, which govern arbitration, or an award will be vacated. See also *Reinke* v. *Greenwich Hospital Assn.,* 175 Conn. 24, 392 A.2d 966 (1978).