GREENFIELD DEVELOPMENT COMPANY OF FAIRFIELD v.
A. EARL WOOD, COMMISSIONER OF TRANSPORTATION

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued December 7, 1976—decision released February 22, 1977

*Angelo J. Smeraldi,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellant (defendant).

*Albert L. Coles,* for the appellee (plaintiff).

BOGDANSKI, J.   This is an appeal by the commissioner of transportation from a reassessment of damages for the partial taking of the plaintiff's land for the improvement of route 7 in the town of Brookfield.   The plaintiff applied to the Superior Court for a review of the statement of compensation filed by the commissioner in the amount of $28,000. The matter was referred to the *Hon. James P. Doherty,* a state referee, who, exercising the powers of the Superior Court, held a hearing and reassessed damages in the amount of $93,000.   From that judgment the commissioner has appealed, assigning error in the refusal of the court to find material facts and in the conclusions reached.   The error directed at the refusal to find material facts has not been briefed and is considered abandoned.   *Pappas* v. *Pappas,* 164 Conn. 242, 243, 320 A.2d 809.

On June 22, 1973, the commissioner took 7.15 acres of the plaintiff's land, along with an easement to drain and a right to grade.  Before the taking, the plaintiff's property consisted of 44.785 acres and was located in two zones.   The westerly portion, where the plaintiff's property abutted route 7, 4.205

acres in area, was zoned commercial. That land was not affected by the taking. The remainder of the subject property, 40.58 acres in area, east of the commercially zoned parcel and abutting route 133, was zoned industrial. The 7.15 acres taken consisted of two parcels, both of which were unimproved. One of the parcels taken consisted of 2.80 acres, of which two-tenths of an acre was part of the Still River riverbed. The second parcel was 4.35 acres in area, of which 1.3 acres were a part of the Still River riverbed.

The subject property was encumbered with a Connecticut Light and Power Company line easement which ran in a northerly direction across the property and was 125 feet in width. That easement encumbered 2.2 acres of which 1.6 acres were located in the taking area. A second easement abutted the first easement along its westerly boundary. It gave the power company access across the property to transport materials, cut brush and service its power-line easement. No part of that easement was within the taking area. No structures could be erected on the land burdened by those easements, but the property could be used for parking, storage, and certain other purposes.

The subject property before the taking was primarily rolling farmland, cultivated with corn and hay when in season. The land taken was located principally in the area of Still River, which flows in a northerly direction, and was generally wet, swampy, and wooded land, approximately five to seven feet below the level of the other property.

In assessing damages, the trial court found that the average per-acre value of the property before the taking was $12,000 for a total value of $537,420.

It then found that the remaining 35.63 acres retained their value of $12,000 per acre for a total value of $427,560. At $12,000 per acre, the 7.15 acres taken were valued at $85,800, which together with $7200 in severance damages resulted in the reassessment at $93,060, called $93,000.

The defendant presses two claims: (1) that the court erred in ascribing to the land taken an average per-acre value, when that land, compared with the entire tract, was inferior in quality and encumbered with an easement, and (2) that the court's conclusion that the acreage taken was equal in value to the remainder of the property is not supported by the subordinate facts found.

It is undisputed that the highest and best use of the subject property was for commercial and industrial development. It is also undisputed that the land taken varied in quality from the remaining land, with some portions located in low and swampy areas, while other parts extended into the Still River riverbed. Some of the land taken was also burdened by preexisting easements.

Nevertheless, the record reveals that the land taken could have been utilized in various ways to expand and supplement the purposes to which the remaining property could be put. One such use would be to allocate the land taken as part of the 75 percent open space zoning requirement, thereby permitting 77,841 more square feet of the remaining land to be used for building construction. The part taken could also have been used to satisfy zoning setback requirements, for parking, storage and employee recreational areas. Moreover, the presence of the water in the Still River could have been used for various commercial purposes, such as for the

cooling of machinery, air conditioning and the processing or removal of waste. We conclude that the record amply supports the court's action in ascribing to the land taken an average per-acre value.

The defendant also argues that in evaluating the land taken, which was different in degrees of wetness, elevation and terrain, the trial court should have found separate and different valuations for the acres taken because of their inferior quality.

A similar claim was made in the case of *Lynch* v. *West Hartford,* 167 Conn. 67, 355 A.2d 42, where the town claimed that in evaluating three adjacent parcels the court was required to find separate and different valuations for each. In that case, the court determined the single highest and best use of the entire subject property and concluded that it was not required to find separate and different valuations for each of the three adjacent parcels. On appeal, we found no error, stating (pp. 76–77) that: "Having reasonably concluded, on the basis of the evidence before him, that the highest and best use of the entire . . . property was in the heavy construction business to which it had been put, the referee was entitled to reject the appraisal . . . based on a contrary assumption and to disregard irrelevant variations in the terrain in adopting a uniform valuation for the land prior to the taking. The low elevation of portions of parcels 1 and 3 did not render those areas unsuitable for use in the construction business because it did not prevent the storage there of some construction materials. The referee was, therefore, not required to devalue portions of the . . . property on the basis of their elevation." Similarly in this case, where the court found the

highest and best use of the entire property, it was not required to make separate and different valuations.

In assessing the value of the property taken, the trier arrives at his own conclusions by weighing the opinions of the appraisers, the claims of the parties, and his own general knowledge of the elements going to establish value, and then employs the most appropriate method of determining valuation. *Esposito* v. *Commissioner of Transportation,* 167 Conn. 439, 441, 356 A.2d 175; *Textron, Inc.* v. *Wood,* 167 Conn. 334, 345, 355 A.2d 307. The trial court has the right to accept so much of the testimony of the experts and the recognized appraisal methods which they employed as he finds applicable; his determination is reviewable only if he misapplies, overlooks, or gives a wrong or improper effect to any test or consideration which it was his duty to regard. *Stanley Works* v. *New Britain Redevelopment Agency,* 155 Conn. 86, 99, 230 A.2d 9. The court's conclusion that the average value of the property taken was equal in value to the remainder of the subject property is adequately supported by the subordinate facts found.

There is no error.

In this opinion the other judges concurred.