PANDOLPHE'S AUTO PARTS, INC. *v.* TOWN OF MANCHESTER

LOISELLE, BOGDANSKI, PETERS, HEALEY ánd DALY, Js.

Argued March 4—decision released June 17, 1980

*Mark S. Shipman,* with whom, on the brief, was *Mark J. Kolovson,* for the appellant (plaintiff).

*Arnold Sbarge,* with whom, on the brief, was *A. Paul Spinella,* for the appellee (defendant).

ARTHUR H. HEALEY, J. Pursuant to General Statutes § 8-129, on March 14, 1978, the defendant town of Manchester took certain property[1] of the plaintiff, Pandolphe's Auto Parts, Inc. (hereinafter Pandolphe) by eminent domain and assessed damages at $373,000. Thereafter, Pandolphe, pursuant to General Statutes § 8-132, appealed this award to the Superior Court. The chief court administrator referred the case to three state referees: *Hon. Charles S. House, Hon. Howard W. Alcorn,* and *Hon. Louis Shapiro,* who exercised the powers of the Superior Court. See General Statutes §§ 52-434, 52-434a (b). A trial was held before this panel of referees, after which judgment was rendered in favor of the plaintiff for $375,000 damages and $2500 appraisal fees. The plaintiff has appealed from that judgment.

The property taken consisted of seventy-five acres zoned for industrial use with about 1046 foot frontage on the Tolland Turnpike. It was vacant, unimproved, partly open and partly wooded. The prop-

---

[1] The taking was by the town of Manchester acting through its Economic Development Commission.

erty was of irregular topography, required substantial grading for development purposes, and was not served by water or sewers. The plaintiff purchased the property in 1976 in two parcels for a total price of $360,000. The property was purchased for use as an automobile junkyard, but a subsequent change in the zoning regulations made such a use impermissible.[2] At the hearing before the panel, two appraisers submitted reports and testified on behalf of the plaintiff. One testified that his opinion of value at the time of the taking was $811,000, while the other stated that his opinion of such value was $1,000,000. In its memorandum of decision, the court stated that it accorded little weight to these opinions. The defendant's appraiser set the value of the property on the date of taking at $375,000. Apparently, the court relied heavily upon the testimony and report of the defendant's appraiser in arriving at its award of damages.

On appeal, the plaintiff pursues essentially one claim: the trial court erred in its reliance upon the testimony and appraisal of the defendant's expert, Peter Marsele. Incidental to this claim, the plaintiff questions the standard and scope of judicial review in this court.

I

We consider first the standard and scope of review employed by this court. The plaintiff claims that, because the majority of the evidence before the trial court was documentary in nature and took the form of appraisal reports and the remainder

---

[2] Between the time the plaintiff purchased the property and the time the zoning regulations no longer made it permissible to obtain a special exception for an automobile junkyard, the plaintiff never sought such a special exception.

of the evidence was testimony of the appraisers explaining those reports,[3] the "clearly erroneous" standard of Practice Book, 1978, § 3060D[4] is inapplicable and that this court may embark upon an independent examination of the record to arrive at an independent result. By this argument, the defendant seeks, in effect, a trial de novo.

The plaintiff misconceives the function of this court. The trial court was presented with conflicting evidence and it is apparent that credibility was a crucial factor. "We cannot retry the facts or pass upon the credibility of the witnesses." *Johnson* v. *Flammia,* 169 Conn. 491, 497, 363 A.2d 1048 (1975); see *Birnbaum* v. *Ives,* 163 Conn. 12, 21, 301 A.2d 262 (1972). Moreover, the trial court examined the property involved in this condemnation. "We have consistently held that the visual observations made by the trier on a visit to the property are as much evidence as the evidence presented for his consideration by the witnesses under oath." *Houston* v. *Highway Commissioner,* 152 Conn. 557, 558, 210 A.2d 176 (1965); see *D'Addario* v. *Commissioner of Transportation,* 180 Conn. 355, 366, 429 A.2d 890 (1980); *Birnbaum* v. *Ives,* supra, 20; *Gentile* v. *Ives,* 159 Conn. 443, 452, 270 A.2d 680 (1970), cert. denied, 400 U.S. 1008, 91 S. Ct. 566, 27 L. Ed. 2d 621 (1971); 30 C.J.S., Eminent Domain § 298. In determining the value of the property taken, the

[3] In fact, however, there was evidence at the trial other than the reports and testimony of the three appraisers.

[4] Practice Book, 1978, § 3060D provides: "The supreme court may reverse or modify the decision of the trial court if it determines that the decision is clearly erroneous in view of the evidence and pleadings in the whole record.

"If the supreme court deems it necessary to the proper disposition of the cause, it may remand the case for a further articulation of the basis of the trial court's decision."

trier arrives at its own conclusions by weighing the opinions of the appraisers, the claims of the parties, and its own general knowledge of the elements going to establish value, and then employs the most appropriate method to determine the damages that result from the taking. *Laurel, Inc.* v. *Commissioner of Transportation,* 180 Conn. 11, 37–38, 428 A.2d 789 (1980); *Greenfield Development Co.* v. *Wood,* 172 Conn. 446, 451, 374 A.2d 1084 (1977); *Esposito* v. *Commissioner of Transportation,* 167 Conn. 439, 441, 356 A.2d 175 (1974); *Slavitt* v. *Ives,* 163 Conn. 198, 209, 303 A.2d 13 (1972); *Schnier* v. *Ives,* 162 Conn. 171, 177–78, 293 A.2d 1 (1972). It is clear that "the trial court has the right to accept so much of the testimony of the experts and the recognized appraisal methods which they employed as he finds applicable; his determination is reviewable only if he misapplies, overlooks, or gives a wrong or improper effect to any test or consideration which it was his duty to regard." *Greenfield Development Co.* v. *Wood,* supra; see *Stanley Works* v. *New Britan Redevelopment Agency,* 155 Conn. 86, 99, 230 A.2d 9 (1967); *Bennett* v. *New Haven Redevelopment Agency,* 148 Conn. 513, 516, 172 A.2d 612 (1961). On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. See Practice Book, 1978, § 3060D. This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the plead-

ings in the whole record, those facts are clearly erroneous.[5] That is the standard and scope of this court's judicial review of decisions of the trial court. Beyond that, we will not go.

## II

We turn now to the plaintiff's single claim of error on appeal. At the outset of our consideration of this claim, we point out that the plaintiff's review in its brief of the evidence it presented to the trial court, undertaken to demonstrate the reliability of that evidence, does not avail it on appeal. We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported.

The plaintiff attacks the testimony and report of the defendant's expert in several respects. He claims that Marsele improperly relied upon the June, 1976 sale of the subject property to the plaintiff for $360,000 because that sale price did not accurately reflect the property's then fair market value. The claim is made that the purchase price was depressed because of the seller's "desperate

[5] We point out in this regard that although the finding has been abolished, a party may still attack the factual basis of the court's decision as reciting facts unsupported by the evidence and as failing to include other material facts that are admitted and undisputed by the parties. Moreover, when a party seeks a further articulation of the factual basis of the trial court's decision or the inclusion in the memorandum of decision of the trial court's rulings on claims of law properly presented, he should file a motion with the trial court under Practice Book, 1978, § 3082 setting forth the specific factual issues he seeks to have resolved and the claims of law he seeks to have included.

need of cash." As the defendant points out, however, there was ample evidence, including testimony from one of the plaintiff's own appraisers,[6] that the 1976 sale of the property was an ordinary arm's length transaction. As such, the price the plaintiff paid for the property in 1976, less than two years prior to the date of taking, was "one of the most important pieces of evidence in determining its present value." 4 Nichols, Eminent Domain (3d Ed.) § 12.311 [11]; see *Schnier* v. *Ives,* 162 Conn. 171, 177, 293 A.2d 1 (1972); annot., 55 A.L.R.2d 791. Whether the earlier sale of the property taken is sufficiently close in point of time to afford a fair comparison is a matter resting largely in the discretion of the trier. See *Schnier* v. *Ives,* supra, 179. Whatever the outer limit of that discretion might be in any given case, it certainly was not exceeded here.

The plaintiff goes on to claim that, even if the 1976 sale of the property reflected its true fair market value, the trial court's failure to consider the impact that the rate of inflation had on the value of the property since 1976 was error.[7] There is nothing in the trial court's memorandum of decision that indicates that the court failed to consider the impact of inflation on the value of the subject prop-

[6] One of the plaintiff's appraisers testified that as far as he knew the 1976 sale to the plaintiff was "a normal arm's length voluntary sale."

[7] An examination of the record discloses, however, that while the plaintiff has referred to a governmental publication in his brief which might form the basis of a court's decision to take judicial notice of the specific rate of inflation for the period in question, the plaintiff presented no such evidence to the trial court and made no request of the court to take judicial notice of any particular rate of inflation during this period. See *Goodhall* v. *Cox,* 129 Conn. 79, 83, 26 A.2d 551 (1942); Holden & Daly, Connecticut Evidence (1966) § 23.

erty. Indeed, the award, exclusive of appraisal fees, was $15,000 in excess of the 1976 purchase price of $360,000.[8] Moreover, Marsele did not state in his report or testify that the rate of inflation during the period from the 1976 purchase to the 1978 taking had no impact on the property's value. He testified that the property had not significantly appreciated in value during that period and that there was absolutely no construction in the area and no activity in "the marketplace that would support an increase or change in value for time." While it is true that the declining purchasing power of the dollar affects the fair market value of real property in this country, it is hardly the only factor that affects value. There was ample evidence that the real property involved in this appeal did not significantly appreciate in value in the period between its purchase by the plaintiff and the taking by the defendant. It is evident, however, that, although the plaintiff had not improved the property in any way since it purchased it in 1976, the trial court, by its award, recognized some appreciation in value.

Further, the plaintiff claims that the sale of certain adjacent property, employed as part of Marsele's appraisal, could not be used to ascertain the value of the subject property because of the difference in accessibility of the two properties.[9] The record demonstrates, however, that Marsele adjusted

[8] We note that the plaintiff did not improve the subject property between the time of its purchase and the time of the taking.

[9] The plaintiff also claims that the 1972 sale of this property, which adjoined the subject property and was also zoned for industrial use, was too remote in time to be considered useful in determining the value of the plaintiff's property. As we stated above, however, this matter rests in the discretion of the trier; *Schnier* v. *Ives*, 162 Conn. 171, 179, 293 A.2d 1 (1972); which was not here abused.

his appraisal on the basis of this sale so as to compensate for any differences between the two properties.

Finally, the plaintiff claims that Marsele incorrectly testified that there was no industrial activity or interest expressed in this area between the years 1972 and 1978, the year of the taking, and that the trial court erroneously relied upon this testimony. The record discloses that the trial court was apprised, by evidence presented by both the plaintiff and the defendant, of any industrial activity in the area, including the distance between any such activity and the subject property. There is no indication that this evidence was not considered by the trier.

There is no error.

In this opinion LOISELLE, PETERS and DALY, Js., concurred.

BOGDANSKI, J., dissented.