[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On February 5, 1993, the plaintiffs (Douglas B. Fournier and Michael P. Solenski) were the owners of a parcel of land (the plaintiffs' land) in the town of Enfield. On that day, the defendant (Enfield), exercising powers granted by Conn. Gen. Stat. sections 48-6 and 48-12, acquired by condemnation interests in the following three portions of the plaintiffs' land: (1) a fee-simple interest in one portion, hereinafter designated as Portion FS; (2) a permanent drainage-easement interest in another portion, hereinafter designated as Portion PD; and (3) a temporary right-to-grade-easement interest in a third portion, hereinafter designated as Portion R, which is the portion of the plaintiffs' land remaining after Portion FS was acquired.
Before Enfield acquired the three interests, the plaintiffs' land consisted of about 5.21 acres at the intersection of the east side of Elm Street with the north side of Moody Road; it was vacant land except for a small (approximately 627 square feet) single-family residence on Portion R; it had 635.49 feet of frontage along Moody Road and 220 feet of frontage along Elm Street; it was encumbered by a 33-foot-wide gas pipeline easement and a 25-foot-wide sanitary-sewer easement; and it was traversed by a brook (Freshwater Brook). About 66% of the plaintiffs' land was within the 100-year flood plain, and about 50% was inland-wetlands soils and watercourses subject to inland-wetlands regulations. The gas pipeline easement was located almost entirely within the wetland and flood plain area, and the sanitary-sewer easement was located entirely within the wetlands and flood plain area. All of the plaintiffs' land was in an I-1 Industrial Zone. In that zone, permitted uses include the use of the land as sites for: offices; a wide variety of industrial activities; CT Page 7781 laboratories; and warehouses. The permitted uses were the highest and best uses for the land. The following public utility services were available to the land: electricity, telephone, water, sanitary sewer and gas.
Under the regulations relating to inland wetlands and flood plain areas, approximately 75% of the plaintiffs' land was subject to a requirement that permits be obtained from the Enfield Wetlands Agency before activities could be undertaken in the wetlands area and, also, that permits or approvals, or both, be obtained from the Enfield Planning and zoning Commission, the Wetlands Agency and the U.S. Army Corps of Engineers before any of the flood plain could be filled.
 I
Portion FS consists of 1.885 acres; the condemnation of that portion reduces the size of the plaintiffs' land from 5.21 acres to 3.325 acres and reduces the length of its frontage from 885 front feet to 653 front feet. This portion is irregular in shape, varying in width from 6.26 feet at the northeasterly corner to 148.79 feet at the southwesterly corner. Exhibit A, which is hereby incorporated into and made part of this Memorandum of Decision, shows the shape and dimensions of Portion FS.
Exhibit A also shows the location of Portion PD at the south-western corner of Portion R. Portion PD consists of .175 acres and is encumbered by a continuation of the same 25-foot-wide sanitary-sewer easement that Portion FS was encumbered by.
The right-to-grade-easement interest over Portion R is a temporary interest, and the plaintiffs make no claim regarding that interest, Similarly, the plaintiffs make no claim regarding the residence; a set-back variance, necessitated by the reduced area between the residence and the new frontage line, was obtained by Enfield, in accordance with the provisions of Conn. Gen. Stat. sec. 48-24.
The highest and best use of the plaintiffs' remaining land continues to be the uses permitted in the I-1 Industrial Zone, and the remaining land continues to be in that zone. The remaining land also continues to have available the same public utility services that were available before the condemnation.
 II
By an appeal filed on April 5, 1993, the plaintiffs appealed from a Statement of Compensation that Enfield had filed on February 5, 1993, regarding Enfield's condemnation of the interests in Portion FS, Portion PD CT Page 7782 and Portion R. That Statement of Compensation determined that $13,700 is the amount of damages sustained by the plaintiffs as a result of Enfield's condemnation of those interests. In their appeal, the plaintiffs allege that they are "aggrieved" by the Statement of Compensation and apply for a review, by the court, of that Statement. The appeal has been referred to me, as a state trial referee, for a hearing and judgment. In the course of the hearing, the court received a report from the appraiser for the plaintiffs (Exhibit B) and two reports from the appraiser for Enfield (Exhibit 1 and Exhibit C) and heard testimony from the appraisers and one of the plaintiffs. The court also had the benefit of viewing the premises and of the briefs submitted by the parties. Annexed to the brief of Enfield is a revision of pages 30 and 37 of Exhibit 1.
 III
"`The owner of land taken by condemnation is entitled to be paid just compensation. Conn. Const. art. I 11. If the taking is partial, the usual measure of damages is the difference between the market value of the whole tract with its improvements before the taking and the market value of what remained of it thereafter.' Lynch v. West Hartford,167 Conn. 67, 73, 355 A.2d 42 (1974)." Minicucci v. Commissioner of Transportation, 211 Conn. 382, 384, 559 A.2d 216 (1989). The same before-and-after rule applies whether the "partial taking" is the taking of a fee-simple interest or an easement-interest. "It is one of the general rules governing the right of eminent domain, that just compensation for taking a part of a parcel of land, or an easement in such a part, is to be ascertained by comparing the value of the entire parcel before the taking with the value of what remains after the taking, and in view of the new conditions created by the taking. If the latter of these two values be less that the former, the amount of the difference measures the damages to be paid." New York, N. H. and H.R. Co. v. New Haven81 Conn. 581, 583, 71 A. 780 (1909).
Because, as noted previously, the plaintiffs make no claim regarding the residence on Portion R, the court will consider damages resulting from the condemnation of only the land. In appraising those damages, both appraisers made their appraisals on the basis of an average price per acre, and not on the basis of assigning different values to different sections of the land. The average price per acre of the plaintiffs' land could then be compared with the average price per acre, adjusted for differences, in market sales of land the appraisers considered comparable. "[T] best test is ordinarily that of market sales." Sibley v. Middlefield, 143 Conn. 107, 120 A.2d 77 (1956). In the present case, the inland wetlands and the flood plain areas, although regulated and of different value from the unregulated area, increased the value of CT Page 7783 the unregulated area because the inland wetlands and flood plain areas are available to satisfy zoning requirements relating to: frontage; minimum area; minimum front, side and rear yards; and maximum lot coverages. This symbiotic relationship between regulated and unregulated areas justifies the use of average-price-per-acre appraisals even though different sections are of different values and had explicit judicial recognition in Greenfield Development Co. v. Wood, 172 Conn. 446, 449, 374 A.2d 1084
(1977). In Enfield's brief, Enfield claims that events and cases subsequent to Greenfield have weakened its force as a precedent, but the court is of the opinion that the holding in that case would be followed if the same issue were to arise now.
Both appraisers agree that the highest and best use of the plaintiffs' land, both before and after the condemnation, is its use for uses permitted in the I-1 Industrial Zone. They do not agree, however, on the before-condemnation average price per acre of the plaintiffs' land. As the basis for his appraisal, the plaintiffs; appraiser used the sales of four comparables, all in Enfield. Of these four sales, only Sale No. 1, hereinafter referred to as "87 Moody Road," is the same sale used as a comparable by Enfield's appraiser. The plaintiff' appraiser valued 87 Moody Road at $33,565 per acre, after adjustments. The four sales occurred between April 27, 1989, and April 29, 1992. They were all sales of vacant land that, since the sale, was improved and used for I-1 Industrial Zone uses. These sales and their subsequent I-1 Industrial Zone uses evidence a definite demand for industrial-zone land in Enfield. Consistent with that demand, "Enfield has one of the lowest industrial availability rates in Hartford County." (Report of Enfield's appraiser, Exhibit 1, p. 10.) After analyzing the four comparables in detail, the plaintiffs' appraiser states (Exhibit B, p. 35.), "The adjusted indications range in value from $27,000 per acre to $33,565 per acre . . . The estimate of land value is $27,500 per acre, which times 5.21 acres equals $143,275."
As the basis for his appraisal, Enfield's appraiser used the sales of three comparables. One of these is in Vernon and the other, East Windsor. These two are of little probative value. "In determining values by comparison, the properties must be similarly located and of like character." Thaw v. Fairfield, 132 Conn. 173, 179, 43 A.2d 79 (1945). The third comparable, Sale No. 2 of the comparables of Enfield's appraiser, is the comparable that is the same as Sale No. 1 of the comparables of the plaintiffs' appraiser; accordingly, this third comparable of the defendant's appraiser will also hereinafter be referred to as "87 Moody Road."
Enfield's appraiser initially valued 87 Moody Road at $19,817 an CT Page 7784 acre, after adjustments. He valued the before-condemnation plaintiffs' land at $20,000 an acre. Because of the small difference between the $19,817 an acre and the $20,000 an acre, the court infers that the valuation of 87 Moody Road by Enfield's appraiser was a significant element in his appraisal of the plaintiffs' land. For that reason, the court deems it worthwhile to examine the basis for the appraisal of 87 Moody Road by Enfield's appraiser.
In his initial appraisal of 87 Moody Road, Enfield's appraiser made a negative time-adjustment of 18% for the period from April 29, 1992, through February 5, 1993. This adjustment was made to reflect the opinion of Enfield's appraiser that that period was a period of declining prices for industrial land. On cross examination, he admitted that the amount of the adjustment was incorrect and said that the adjustment should be 14%; the 14% negative time-adjustment appears in the revision of page 30 of his report, annexed to Enfield's brief. Enfield's appraiser offered no documentary evidence to support his opinion about that negative time-adjustment. Other evidence, however, persuades the court that not negative time-adjustment should have been made. That other evidences is Exhibit C, which is a "Value Finding Appraisal" prepared for Enfield by Enfield's appraiser in January, 1992. In Exhibit C, Enfield's appraiser found the damages resulting from the taking of 1.88 acres of the plaintiffs' land to be $13,700 (the identical amount in the Statement of Compensation). Yet, in Exhibit 1 (p. 32) , Enfield's appraiser values the plaintiffs' land at $20,000 an acre on February 5, 1993. The change in the value of the plaintiffs' land during the period from January, 1992 to February 5, 1993, is not attibutable [attributable] to any changes in the amount or location of the condemned land. It is attributable, therefore, only to an increase in the market value of the plaintiffs' land during the period from January, 1992, to February 5, 1993. It is obvious that the $20,000 valuation for one acre in February, 1993, has to represent an increase in value in comparison with the $13,700 valuation for 1.88 acres in January, 1992. With reference to a time adjustment, the plaintiffs' appraiser states (Exhibit B, p. 34), "A time adjustment is not warranted based on the available information." On the basis of the evidence available to the court, the court finds that, at least, a negative time-adjustment is not warranted.
If the negative time-adjustment is omitted from the 89 Moody Road Appraisal of Enfield's appraiser, that appraisal is revised as follows, using the same sale price and percentages used by Enfield's appraiser: sales price (1.08 acre) $72,500; 10% assemblage negative adjustment, $7,250, making "adjusted price" of $62,250; apply to the "Adjusted price" a 30% negative adjustment for smaller-lot-size and a 30% negative adjustment for wetlands and flood plain, a total additional CT Page 7785 negative adjustment of 60% or $39,150; deducting the $39,150 from the adjusted price of $62,250 yields $26,100 as the net revised adjusted price per acre for 89 Moody Road. This substantial upward revision in the adjusted price per acre for 89 Moody Road, in the absence of any other Enfield comparable used by Enfield's appraiser, renders the $20,000 per acre appraisal of Enfield's appraiser of little probative value in comparison with the probative value of the $27,500 per acre appraisal of the plaintiff's appraiser.
After viewing the plaintiffs' land and considering the reports and testimony of the appraisers, and the briefs of the parties, the court is of the opinion, and finds, that the appraisal of the plaintiffs' appraiser is both credible and persuasive; that the fair market value per acre of the plaintiff's land before condemnation is $27,500 per acre; and that the fair market value of the plaintiffs' land, consisting of 5.21 acres before condemnation, is $143,275.
With respect to the after-condemnation value of the plaintiffs' land, Enfield's appraiser made an initial finding of $89,862, which was rounded to $90,000. That figure, however, included an error in the computation, which valued the PD parcel twice, once at $26,000 an acre and once at $3412. The necessary correction reduced the appraisal by $4550, making $85,450 the corrected after-condemnation valuation of the plaintiffs' land by Enfield's appraiser. The plaintiffs' appraiser arrived at his after-condemnation valuation by multiplying the remaining 3.325 acres by the per acre value of $27,500, yielding $91,438, and then deducting from that figure $1,200, rounded from $1,203, representing the lessened value of Portion PD because of the drainage easement. Those computations result in a valuation of $90,238, rounded to $90,275, as the after-condemnation value of the plaintiffs' land. The difference between the before-condemnation value of $143,275 and the after-condemnation value of $90,275 is $53,000. The court finds both credible and persuasive this method of evaluating the difference between the before-condemnation value of the plaintiffs' land and its after-condemnation value and finds that difference to be $53,000.
 IV
Enfield's Statement of Compensation, previously referred to, lists Mobil Pipe Line Company (Mobil) and Town of Enfield as "persons having a record interest" in the land being condemned. That listing is required by Conn. Gen. Stat. sec. 8-129 (Conn. Gen. Stat. sections 8-128
through 8-133 being made applicable to the present proceeding by Conn. Gen. Stat. sec. 48-12). "The obvious purpose of [Conn. Gen. Stat. sec.8-129; is to protect an incumbrancer of land taken for public use. . ." Palo CT Page 7786 v. Rogers, 116 Conn. 601, 604, 165 A. 803 (1933). In the present case, on motion of the plaintiffs, the $13,700 deposited with the Clerk of Court was paid to the plaintiffs, but the judgment or order provided for in Conn. Gen. Stat. sections 8-130 and 8-132a, to determine the equity of each of the "persons" having an interest in the deposit or compensation, has not been entered. Under Conn. Gen. Stat. sec. 8-130, "(T)he court shall enter judgment against the municipality for the amount of the deficiency," i.e. for the amount by which the damages exceed the deposit. The court will enter that judgment, but because the equities of Mobil and Enfield have not yet been determined, the judgment will have to provide that the deficiency be paid to the Clerk of the Superior Court for the Judicial District of Tolland. Conn. Gen. Stat. sec. 48-21, which provides for that procedure, does not specifically apply to proceedings under Conn. Gen. Stat. sections 48-6 and 48-12, but the court can accomplish the purpose of the notice requirements in Conn. Gen. Stat. sec. 8-129 by providing for payment of the deficiency in the manner set forth in Conn. Gen. Stat. 48-21.
 V
The damages to which the plaintiffs are entitled being greater in amount than the amount determined in the Statement of Compensation, the plaintiffs are entitled to have the costs include appraisal fees, under the provisions of Conn. Gen. Stat. sec. 8-133. The court finds that reasonable appraisal fees for the appraiser for the plaintiffs are $1,900. Although Conn. Gen. Stat. sec. 48-26 refers to fees for "expert testimony," Conn. Gen. Stat. sec. 8-133 does not refer to fees for "expert testimony." In this conflict between a statute of general application (Conn. Gen. Stat. sec. 48-26) and one of specific application Conn. Gen. Stat. sec. 8-133), the general rule is that the statute of specific application will control. Budkofsky v. Commissioner of Motor Vehicles 177 Conn. 588, 592, 419 A.2d 333 (1979). The court makes no award for expert testimony by the appraiser for the plaintiffs.
In sum, the court finds that the plaintiffs have sustained as a result of the taking by Enfield of the fee-simple interest in Portion FS, the permanent drainage-easement interest in Portion PD, and the temporary right-to-grade easement interest in Portion R damages of $53,000. The court finds that the after-condemnation value of the plaintiffs' land is $90,275 and that the before-condemnation value of the plaintiffs' land was $143,275, and that, therefore, the after-condemnation value of the plaintiffs' land is $53,000 less than the before-condemnation value of the plaintiffs' land. Judgment may enter, therefore, against Town of Enfield in the amount of $53,000, less the amount of $13,700 already paid, a deficiency of $39,300, with interest at the statutory legal rate, from the CT Page 7787 date of taking to the date of payment, on such deficiency, and costs (which shall include appraisal fees of $1,900); and judgment may further enter that Town of Enfield pay the deficiency of $39,300, and interest thereon, to the Clerk of the Superior Court for the Judicial District of Tolland, the deficiency and interest to be held by said Clerk of Court subject to the further orders of the court.
Rubinow, State Trial Referee