[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 3845
The Commissioner of Transportation of the state of Connecticut ("Commissioner") has filed a notice of eminent domain proceedings, which includes a taking by condemnation and assessment of damages, pursuant to General Statutes § 13a-73 (b).[1] The purpose of the taking by eminent domain was to repair a bridge of about 60 feet in length over Sasco Creek, which is the boundary between the towns of Westport and Fairfield. The taking was of a temporary nature during the course of construction. The taking created an easement area consisting of approximately 3,150 square feet "for a temporary work area, "and it included an easement to install a metal beam rail approximately fifteen feet in length. The notice assesses the damages for the taking at $17,400. July 24, 1998 was the taking day.
The subject property affected by the taking is owned by the defendant owner, Hook N' Needle (hereinafter referred to as "owner"), a general partnership. The owner claims to be aggrieved by the Commissioner's action, and has filed an application as authorized by General Statutes § 13a-76 for reassessment of the damages.[2] The undersigned conducted a hearing in which testimony was given by the appraisers for each of the parties, exhibits were received, and the court viewed the subject property in the company of both counsel as required by General Statutes § 13a-76.
The owner's property is located on the northerly side of U.S. Route # 1, at 1869 Post Road East, and is located primarily in Westport. However, there is also a parking lot containing about 0.17 acres owned by the appellant over the border in Fairfield which contains about 10 spaces for employee parking. The owner purchased the property in 1978, which includes a building located in Westport. The owner conducts a retail yarn and thread business on the first floor of the building, which contains approximately 4,200 square feet. The property contains a wood frame structure built in 1840 and renovated in 1979. The second floor of the building contains an 800 square foot residential apartment with a separate entrance and a small office. The building also contains a basement of approximately 1,900 square feet, most of which is used in conjunction with the retail business on the first floor. Adjacent to the CT Page 3846 building and to the east of the building in Westport is another: parking lot with sixteen spaces which is used primarily for customers. The lot itself contains 1.13 acres, of which Sasco Mill Pond comprises 0.77 acres.
Pursuant to General Statutes § 13a-73 (b), in an eminent domain proceeding, the owner of such land shall be paid by the state for all "damages." "The single objective of [an eminent domain] proceeding is to ensure that a property owner shall receive, and that the State shall only be required to pay, the just compensation which the fundamental law promises the owner for property which the State has seen fit to take for public use." Thomaston v. Ives, 156 Conn. 166, 174, 239 A.2d 515 (1968).
The taking that occurred in this case consisted of several elements. The first involves the parking lot across the bridge in Fairfield which contains approximately 3,150 square feet. This lot could not be used for about a year during the construction and repair process, which ran from the summer of 1999 to the following summer of 2000, as the plaintiff Commissioner used the area for construction vehicles and supplies. The second taking also involved, for the same period of time, property along the entire front of the building, about 80 linear feet, and also about fifteen or so feet in width, along the highway line, which prevented use of a door at the southeast corner of the building. Thirdly, the plaintiff obtained a permanent easement to install a permanent metal beam rail of about fifteen linear feet in the Fairfield portion of the property near the parking area.
Thus, this application for reassessment of damages involves not only a partial taking, but also a temporary taking which lasted about a year. "When real property is taken by eminent domain to be devoted to the use of the condemnor for a temporary period only, it is well settled that the loss in market value of the property is not the proper criterion of value. Rather, the value of the property for the period during which it is held by the condemnor, or the diminution in value of the use of occupancy of the property for such period, has been held to be the measure of compensation. Thus, it has been held that where the condemnor has obtained prejudgement possession of land, the condemnee must be paid the fair market value of possession of the property for the period. . . . In some cases the damages have been declared to be the rental value of the property for the period of occupation." 4 P. Nichols, Eminent Domain (3d Ed. Rev. 1990, J. Sackman B. Van Brunt eds.) § 12E.01, pp. 12E-1 through 12E-3.
The role of this court in an appeal in an application for reassessment in a condemnation case is more than just an arbitrator of differing opinions of witnesses. The court must make an independent determination of CT Page 3847 value and fair compensation in light of all the circumstances, the evidence, the court's general knowledge and the viewing of the premises. The court's objective is to give the plaintiff, as nearly as possible, a fair equivalent in money as just compensation for the property taken.Feigenbaum v. Waterbury, 20 Conn. App. 148, 153-154, 565 A.2d 5 (1989). Valuation is a matter of fact to be determined by the trier's independent judgment. D'Addario v. Commissioner of Transportation, 180 Conn. 355,369, 429 A.2d 890 (1980). In determining fair market value, the trier may select the method of valuation most appropriate to the case before it;Laurel, Inc. v. Commissioner of Transportation, 180 Conn. 11, 37-38,428 A.2d 789 (1980); and "has the right to, accept so much of the testimony of the experts and the recognized appraisal methods which they employed as he finds applicable." (Citation omitted.) Pandolphe's v. AutoParts, Inc. v. Manchester, 181 Conn. 217, 221, 435 A.2d 24 (1980).
The Commissioner's appraiser, W. S. Nugent, general appraiser, submitted an appraisal report and testified that the damages visited upon the property owner by the Commissioner's temporary taking for highway purposes was $19,700. This amount represented an increase of $2,300 over the amount deposited by the Commissioner and later turned over to the property owner. The State's appraiser valued only the land taken, and found that the taking had no impact upon the remaining land and building.
This appraiser used three comparable sales in Fairfield, Westport and Norwalk, and, after adjustments, determined that the owner's land was worth $8.95 a square foot, which resulted in a "before" fair market value of $442,700. Mr. Nugent used the same $8.95 square foot number for his "after' valuation, but subtracted $1,100 for two items both in the amount of $550. One item was a stone wall of about 44 linear feet which was lost as a result of the construction, and the other involved the easement to install the metal beam rail. To that number, the appraiser added $18,600 to reach his figure of $19,700 total damages. This $18,600 was in turn comprised of three numbers. The first number represents a loss of six parking spaces costing $9,360. The second is $3,947, the value of the temporary work area, and the third number is $5,339 for the 80 linear feet long loss of access along the front of the building on the highway.
The owner's appraiser Michael B. Gold, MAI, used a different method to calculate damages and arrived at the figure of $65,000. He summed up his theory of damages in these words: "the measure of damages relates to the potential loss of rental income from the property resulting from the disruption caused by the easements during this time."
The owner's appraiser then estimated the fair rental value of retail, office and residential use by analyzing a number of rentals in the area. CT Page 3848 He estimated that the market value of retail space at the time of the taking was $24 per square foot, as was the value of the small office on the first floor. The second floor office space was assigned a fair market value of $12 per square foot, and the apartment's rental value was $1,250 per month. The owners appraiser then calculated the "negative impact" on the property rising from the state's temporary taking, in the sense of the "impact on the owner's ability to attract a retail tenant for occupancy at subject property during the period of disruption, and the rent concession that would be necessary." Mr. Gold multiplied the square feet of each of the three uses, retail, office and residential, and stated that the retail and office use would necessitate a rent concession of 50% and 10% for the apartment. This is the method he used to arrive at a negative impact of $65,000.
In determining damages for a temporary taking, Bowen v. Ives,171 Conn. 231, 238, 368 A.2d 82 (1976), determined that: "[t]he mere fact that injuries will be temporary and incident to the period of construction only is no ground for disallowing recovery, since a purchaser might pay less if he knew such injuries were to be inflicted." In the present case, it is clear from the evidence that the construction repair project produced a considerable amount of noise, dust and disturbance to the users of the subject property. A prospective tenant would take that into consideration were he considering renting space in the building. Such a prospective tenant would likely opt to rent comparable premises without such adverse impacts, or demand a rental concession during the period of construction.[3] Furthermore, an existing tenant would likely seek a temporary rent reduction. In the court's opinion, a prospective tenant on the day of taking would reasonably believe a period of construction to be a year's duration.
In D'Addario v. Commissioner of Transportation, supra, 180 Conn. 367-368, the trial court determined that "the diminution in the value of the property because of the denial of access should be measured by the rental value of the property during the two years and three months' time during which construction work was necessary." "The court's conclusion that the property taken could have been profitably used for commercial purposes, and that the reasonable use of the land was impaired by a period of deprivation of access, did not involve inadmissable speculation about future profits. . . ." Id., 368.
The court finds from the evidence that the likely impact on the subject property would necessitate a rental concession, reasonable in amount, is $65,000, as calculated by the owner's appraiser. The State's appraiser found that the taking had no impact on the remaining property and found no temporary damages except as indicated above. The owners appraisal is more realistic and hence is adopted. CT Page 3849
In a supplemental report dated February 7, 2001, submitted at the request of the owner, Mr. Gold, the owner's appraiser was asked to appraise the value of "the potential for periodic flooding" caused by the construction repairs, and he estimated it to be $38,000. It is true that on November 12, 2000, about four months or so after the bridge project was completed, a newly installed catch basis overflowed and caused about $24,000 of damages to the owner. However, it has not happened since then, and, furthermore, there was no evidence submitted that the flooding was caused by a design defect attributable to the Commissioner.
Moreover, the court need not consider "elements of damage that were not a "necessary, natural, or proximate result of the taking." (Citation omitted; internal quotation marks omitted.) Cappiello v. Commissioner ofTransportation, 203 Conn. 675, 681, 525 A.2d 1348 (1987). "Where only part of a parcel is taken for a temporary period, the damages include consequential damages to the remainder. . . . To be compensable, however, the consequential damages must result from the temporary easement and not from the activity of the condemnor elsewhere in the area." 4 P. Nichols, supra, § 12E.01, pp. 12E-1 through 12E-3.
This same theory applies to an additional $10,000 that the owner's appraiser attributed to the fact that the highway was now closer to the building than it was before the repair project began. The owner's appraiser opined that as a result, the first floor retail use would be adversely affected because of increased noise and pollution. Thus, in reality, the owner seeks in this proceeding a total of $113,000 damages, consisting of $65,000 for the easements, $38,000 for flooding and then $10,000 for the relocation of the highway. Nevertheless, this court believes that reasonable compensation for the temporary and partial taking is a total of $65,000.
After reviewing all of the testimony and the exhibits in this case, having read all of the briefs of the parties and having viewed the subject property, and in light of the amount of compensation paid into court upon the taking by the Commissioner, and considering the ultimate award of this court, the court finds a fair and reasonable rate of interest to be applied to the balance due the owner, as an element of just compensation, to be six percent (6%).
Furthermore, in light of the court's review of the entire file, the court awards a reasonable appraisal fee to the owner in the amount of $4,000, as a further element of just compensation.
Judgment may enter in favor of the owner to recover from the plaintiff Commissioner $65,000, less the $17,400, the amount previously paid into CT Page 3850 court, plus interest on said balance at six percent (6%) per year, plus an appraisal fee of $4,000, and costs as taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 22nd day of March, 2002.
William B. Lewis, Judge T.R.